# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GAIL S. PANNY,

        Plaintiffs,

v

BANK OF AMERICA, NA; PENNYMAC LOAN SERVICES, LLC; and CITI INVESTMENT GROUP CORP;

        Defendants.

No. 2:14-cv-13866
Hon. Arthur J. Tarnow
Magistrate: David R. Grand
Lower Court No. 14-142723-CH
Hon. Denise Langford Morris

_____

**GANTZ ASSOCIATES**
By:  Adam J. Gantz (P58558)
Attorneys for Plaintiff
31275 Northwestern Highway, Suite 208
Farmington Hills, MI 48334
Tel: (248) 987-6505
agantz@gantzassociates.com

**DICKINSON WRIGHT PLLC**
By:  KJ Miller (P62014)
Attorneys for PennyMac
350 S. Main Street, Suite 300
Ann Arbor, MI 48104-2131
Tel: (734) 623-7075
kjmiller@dickinsonwright.com

**DICKINSON WRIGHT PLLC**
By:     Amy Sabbota Gottlieb (P67020)
       Farayha J. Arrine (P73535)
Attorneys for Bank of America
2600 West Big Beaver Road, Suite 300
Troy, MI 48084
Tel: (248) 433-7286
agottlieb@dickinsonwright.com
farrine@dickingsonwright.com

**PLAINTIFF'S BRIEF IN RESPONSE TO PENNYMAC LOAN SERVICES, LLC'S MOTION TO DISMISS AMENDED COMPLAINT**

_____

Plaintiff, Gail S. Panny, through her attorneys, Gantz Associates, hereby submits the following Brief in Response to the Motion for Summary Judgment filed by Defendant, Pennymac Loan Services, LLC ("Pennymac").

# TABLE OF CONTENTS

I.      STATEMENT OF ISSUES PRESENTED…………………………………ii

II.     STATEMENT OF CONTROLLING AUTHORITY……………...........iii-iv

III.    STATEMENT OF FACTS…………………………………………………..1-3

IV.     LAW AND ANALYSIS………………………………………………….3-23

        A.      Pennymac is a necessary party to Plaintiff's claims for
                declaratory relief requesting that the court set aside a sale in
                which Pennymac was the seller, and compel Pennymac to
                refund the sale proceeds to the purchaser…………..……….3-5

                1.      The Sheriff's Deed is void ab initio, because it was
                        issued in direct violation of the TRO..........……5-7

                2.      The Sheriff's Deed is void ab initio, because the
                        purchaser had previously surrendered its authority
                        to transact business in Michigan………...……..7-8

                3.      The Sheriff's Deed should be voided in the
                        interests of justice.............……………………8-10

                4.      Citi is violating the redemption statute……...10-11

        B.      Pennymac is not entitled to judgment on the pleadings..12-23

        C.      Plaintiff has suffered prejudice by the issuance of a sheriff's
                deed in violation of a TRO………………………….....23-25

V.      CONCLUSION AND REQUEST FOR RELIEF……………..…………25

## STATEMENT OF ISSUES PRESENTED

1.     Is Pennymac a necessary party to Plaintiff's claims for declaratory relief seeking the Court to force Pennymac to cancel a sheriff's sale in which Pennymac was the seller, and to compel Pennymac to refund over a half million dollars in sheriff's sale proceeds to Citi?

Plaintiff's answer is "yes".
The Mortgagee/Servicer Defendants' answer is presumably "no".
Citi's answer is presumably "no".
The Court' answer should be "yes".

2.     Is a Sheriff's Deed issued in violation of a TRO void ab initio, due to a structural defect that goes to the heart of the foreclosure?

Plaintiff's answer is "yes".
The Mortgagee/Servicer Defendants' answer is presumably "no".
Citi's answer is presumably "no".
The Court' answer should be "yes".

3.     Does the issuance of a Sheriff's Deed in favor of a company that previously surrendered its authority to transact business in Michigan constitute a structural defect that goes to the heart of the foreclosure, rendering the Sheriff's Deed void?

Plaintiff's answer is "yes".
The Mortgagee/Servicer Defendants' answer is presumably "no".
Citi's answer is presumably "no".
The Court' answer should be "yes".

4.     To the extent that a Sheriff's Deed issued in violation of a TRO is voidable as opposed to void, does this case present any of the limited equitable circumstances which would authorize the Court to refuse to void the Sheriff's Deed?

Plaintiff's answer is "no".
The Mortgagee/Servicer Defendants' answer is presumably "yes".
Citi's answer is presumably "yes".
The Court' answer should be "no".

## STATEMENT OF CONTROLLING AUTHORITY

Plaintiff relies upon Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of a complaint. *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004.) In deciding a Fed. R. Civ. P. 12(b)(6) motion, a district court must view the complaint in the light most favorable to the plaintiff, and take all well-pleaded factual allegations as true, as the moving party has the burden of proving that no claim exists. *Erickson v. Pardus,* 550 U.S. 89 (2007).

Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In addition, "[A] plaintiff will not be thrown out of court on a Fed. R. Civ. P. 12(b)(6) motion for lack of detailed facts." *In re Tower Air, Inc.*, 416 F.3d 229, 237 (3d Cir. 2005).

Plaintiff further relies upon Fed. R. Civ. P. 19(a)(1), which absolutely required Plaintiff to name Pennymac as a Defendant to its claims for declaratory relief seeking to either set aside or effectuate a redemption of a sheriff's deed wherein Pennymac is the seller, and Plaintiff's claims include the request that the Court forcibly compel Pennymac to refund the sheriff's sale purchase price to Citi.

Plaintiff further relies upon *Davenport v. HSBC*, 275 Mich. App. 344, 739 N.W.2d 383 (2007), which was applied in Federal Court in this Circuit in *Mitan v Fed Home Loan Mortgage Corp, 703 F.3d 949 (CA6, Dec 12, 2012)*, and requires that the Sheriff's Deed at issue is absolutely void, ab initio, because it was conducted in violation of a TRO, which constitutes a structural defect going to the heart of the foreclosure process.

Plaintiff next relies upon *Davenport v. HSBC*, 275 Mich. App. 344, 739 N.W.2d 383 (2007), once again, in support of her claim that the Sheriff's Deed is void ab initio, because Citi had surrendered its authority to transact business in the State of Michigan several months before Citi transacted business in the State of Michigan by purchasing the Property at sheriff' sale.

Plaintiff next relies upon *Easley v. Pettibone Michigan Corporation*, 990 F.2d 905 (Cir 6, 1993), given that, to the extent the Sheriff's Deed is voidable as opposed to merely void, the limited equitable circumstances which would justify the Court in refusing to void the Sheriff's Deed simply are not present in this case.

Finally, Plaintiff relies upon MCL 600.3248, which governs the requirements of the parties with respect to the redemption of mortgages from sheriff's sale.

## **STATEMENT OF FACTS**

Plaintiff owns and resides in the real property at issue in this action, which is located in the City of West Bloomfield, County of Oakland, State of Michigan, and is legally described as follows:

> T2N, R9E, Sec. 11, Lot 2, Supervisor's Plat #17, according to the Plat thereof as recorded in Liber 71, Page 16 of Plats, Oakland County Records,

Tax I.D. No. 18-11-451-020, commonly known as 3700 Orchard Lake Road, Orchard lake, MI 48324-1642 (the "Property").

The Property has been Plaintiff's home for almost 30 years, and she intends to spend her golden years in this beautiful, Pine Lake front condominium.

Unfortunately, Plaintiff, who is a prison chaplain, suffered a financial hardship last year, causing her to fall behind in her Mortgage. She attempted to work with her lender, but the lender insisted on foreclosing, presumably because the property is such a valuable piece of lakefront land.

As such, Plaintiff filed suit in the Oakland County Circuit Court, on September 4, 2014, seeking a Temporary Restraining Order ("TRO"), restraining and enjoining the sheriff's sale of the Property until a show cause hearing on the merits. (*See* TRO – **Ex. "A"**.)

Counsel for Plaintiff sent the TRO to the foreclosing law firm, via facsimile, and attempted to follow up with a telephone call, to ensure that sheriff's sale

scheduled for but the foreclosing law firm was having serious technical difficulties with all of their communications, i.e. no phone lines, no fax lines, no internet, no email, etc.

As a result of the technical difficulties at the foreclosing law firm, the foreclosing law firm was unaware of the entry of the TRO, and innocently sold the Property at sheriff's sale to third party, Citi Investment Group Corp. ("Citi"), on September 9, 2014, i.e. during the 14 day window that the TRO was in full effect, and strictly barred the sheriff's sale. (*See* TRO – **Ex. "A"**; and Sheriff's Deed – **Ex. "B"**.)

Immediately upon learning of the Sheriff's Deed, counsel for Plaintiff contacted the foreclosing law firm, and spoke to counsel for Defendant in this litigation, as well, and **it was agreed by Plaintiff, the foreclosing law firm, Bank of America, and PennyMac, that the Sheriff's Deed was issued in error, in an unintentional violation of the TRO, and that the same is required to be set aside, with the purchase price and interest refunded to Citi**.

Accordingly, since approximately October 1, 2014, counsel for Defendant has been attempting to negotiate the refund amount with Citi, to no avail. Put plainly, Citi was illegally attempting to take advantage of this innocent mistake by the foreclosing law firm, to obtain a windfall profit as a result of its attempt to

purchase the Property in circumvention of the TRO issued by Judge Langford Morris.

However, at some point in 2015, something changed. Apparently with dollar signs in their eyes for their clients, and having lost any feelings of concern for the fact that a sheriff's sale has been conducted in violation of a TRO, counsel for Pennymac and Bank of America ceased attempting to comply with the law, ceased attempting to void the sheriff's sale, and instead cut off communications with counsel for Citi and counsel for Plaintiff, seemingly pulling all previous offers of settlement off the table, in an apparent new strategy of running out the clock and obtaining an Opinion from this Court on their Motions to Dismiss on the pleadings, in an attempt to allow the void transaction to go through, so their clients could keep the substantial sheriff's sale proceeds of over half a million dollars, thus prompting the Plaintiff's requirement to file this Brief.

## LAW AND ANALYSIS

**A.    PENNYMAC IS A NECESSARY PARTY TO PLAINTIFF'S CLAIMS FOR DECLARATORY RELIEF REQUESTING THAT THE COURT SET ASIDE A SALE IN WHICH PENNYMAC WAS THE SELLER, AND COMPEL PENNYMAC TO REFUND THE SALE PROCEEDS TO THE PURCHASER.**

Pennymac claims that it is entitled to judgment on the pleadings against Plaintiff's claims for declaratory relief to set aside the sheriff's deed and/or allow Plaintiff to effectuate a redemption of the same, because "Plaintiff does not – and

cannot – allege that Pennymac violated any laws by foreclosing." *See Pennymac's Motion*, Doc. #21, at pgs. 19-20.)

Pennymac misses the point entirely! Pennymac is not being sued for intentional misconduct. Pennymac is being sued because, as the seller at sheriff's sale, it is a necessary party to claims seeking to set aside and/or redeem that very same sheriff's sale.

In fact, had Plaintiff **not** named Pennymac as a Defendant in this case, it would have been a violation of the Federal Rules of Civil Procedure!

Fed. R. Civ. P. 19(a)(1) states as follows:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

> (2) Joinder by Court Order. If a person has not been
> joined as required, the court must order that the person be
> made a party. A person who refuses to join as a plaintiff
> may be made either a defendant or, in a proper case, an
> involuntary plaintiff.

The Sheriff's Deed at issue, which Plaintiff has sued to set aside or effectuate the redemption of, specifically lists Pennymac as the assignee mortgagee conducting the sheriff's sale, and receiving the proceeds of the same. *See Sheriff's Deed, at Ex. 6 to Pennymac's Motion*, Doc. #21, Pages 2-7.

As such, Pennymac's own exhibits to its Motion for Judgment on the Pleadings prove that Pennymac is a necessary party to this litigation, and Pennymac's Motion must be denied pursuant to the above-quoted provisions of Fed. R. Civ. P 19(a)(1).

Moreover, for the reasons stated below, Plaintiff has clearly stated claims for which relief can be granted for declaratory relief to either void, or allow Plaintiff to effectuate the redemption of, the property.

## 1.    The Sheriff's Deed is void ab initio, because it was issued in direct violation of the TRO.

In *Davenport v. HSBC*, 275 Mich. App. 344, 739 N.W.2d 383 (2007), in voiding a sheriff's deed, the Michigan Court of Appeals held as follows:

> We recognize that a defect in fulfilling the statutory notice
> requirements attendant to a foreclosure by advertisement
> renders the resulting sale voidable rather than absolutely void.

5

> *Jackson Investment Corp. v. Pittsfield Products, Inc.,* 162 Mich.App. 750, 755-756, 413 N.W.2d 99 (1987).
>
> However, what is at issue in the present case is not a mere notice defect. Instead, it is a structural defect that goes to the very heart of defendant's ability to foreclose by advertisement in the first instance.

The instant action is analogous to Davenport, in that the defect at issue is not merely related to a typographical error in the advertisement for foreclosure, but is in fact a structural defect that goes to the very heart of Defendants' ability to foreclose by advertisement in the first place.

Specifically, there was a TRO in effect, which "preserves the status quo", by "restraining and enjoining the sheriff's sale of the Property, commonly known as 3700 Orchard Lake Road, Orchard Lake, MI 48324-1642, pending a show cause hearing on the merits". The TRO further stated on its face that TRO would remain in effect until the Show Cause hearing on Wednesday, September 17, 2014, at 8:30 a.m. (*See TRO* – **Ex. "A"**.)

The sale occurred during the specific time the TRO was in effect, barring Defendants from conducting the same, i.e. between September 4, 2014 and September 17, 2014, on September 9, 2014.

In other words, Defendants did not have a legal right to foreclose at the time they conducted the sheriff's sale, and the violation of the TRO therefore

constituted a "structural defect, which goes to the very heart of defendant's ability to foreclose by advertisement in the first instance."

Based on the foregoing, the sheriff's sale must be set aside as void ab initio, in accordance with Michigan law, with the purchase price to be refunded to Citi. *See Davenport. See also Mitan v Fed Home Loan Mortgage Corp, 703 F.3d 949 (CA6, Dec 12, 2012) – citing Davenport's state court ruling in a 6th Circuit case.*

### 2. The Sheriff's Deed is void ab initio, because the purchaser had previously surrendered its authority to transact business in Michigan.

On April 22, 2014, Citi filed an Application for Certificate of Withdrawal with the State of Michigan Department of Licensing and Regulatory Affairs, in which Citi surrendered "its authority to transact business or conduct business affairs in Michigan". (*See Application for Certificate of Withdrawal* – **Ex. "C".**)

Although it had surrendered its authority to engage in business transactions in Michigan, such as purchasing properties at sheriff's sale, in April, 2014, Citi illegally transacted business in Michigan by purchasing the Property at sheriff's sale in September, 2014. (*See* Sheriff's Deed – **Ex. "B".**)

The sheriff's sale to Citi, at a time in which Citi was not authorized to transact business in the State of Michigan, constituted a structural defect going to the heart of the sheriff's sale, and the Sheriff's Deed must therefore be set aside as void ab initio, with the purchase price refunded to Citi, in accordance with

Michigan law. *See Davenport. See also Mitan v Fed Home Loan Mortgage Corp,*
*703 F.3d 949 (CA6, Dec 12, 2012) – citing Davenport's state court ruling in a 6th*
*Circuit case.*

### 3.   The Sheriff's Deed should be voided in the interests of justice.

This argument is pled in the alternative to Arguments I & II above.
Assuming arguendo that a sheriff's deed issued in violation of a TRO is not
absolutely void ab initio, which Plaintiff vehemently insists, then the same would
at least be voidable. *See Davenport and Mitan*.

Although the instant action does not involve an action in violation of the
automatic stay in bankruptcy, the issues are analogous – an action taken in
violation of an injunction issued by a court of competent jurisdiction.

In *Easley v. Pettibone Michigan Corporation,* 990 F.2d 905 (Cir 6, 1993),
the 6th Circuit made it clear that actions taken without knowledge of the automatic
stay are "invalid and voidable and shall be voided absent limited equitable
circumstances." The Court further held that those limited equitable circumstances
generally arise "only where the debtor unreasonably withholds notice of the stay
and the creditor would be prejudiced if the debtor is able to raise the stay as a
defense, or where the debtor is attempting to use the stay unfairly as a shield to
avoid an unfavorable result". *Id.*

In the instant action, Plaintiff sent the TRO to the foreclosing law firm, and the only reason the foreclosing law firm did not receive it on time is that it was admittedly suffering a complete shutdown of all phone, fax and internet lines, and was incapable of receiving the TRO.

Moreover, there is no prejudice to Defendants, and in fact, Defendants concur with the relief requested within this Motion. There is not even any prejudice to Citi, because it will receive a full refund of its purchase price (which it could have had all the way back in October, 2014, if it had not illegally attempted to blackmail Plaintiff by demanding $35,000 more than required by the redemption statute, as discussed below).

Finally, it is clear that Plaintiff is not attempting to enforce the TRO unfairly, or as a shield to avoid an unfavorable result. In reality, Plaintiff is seeking to enforce the TRO simply to save her home, and there is nothing unfair about requesting a TRO from a Judge, obtaining one, and enforcing its terms. The purpose of the TRO was to provide Plaintiff with time to reinstate her loan, and Plaintiff **will** reinstate her mortgage and begin making payments to Defendants on the same, as soon as the Court sets aside the Sheriff's Deed issued in violation of the TRO.

Plaintiff is currently in active negotiations with Defendant, PennyMac, on loss mitigation alternatives to save her home, and she is confident that the loan will

be reinstated by stipulation of the parties once the Sheriff's Deed is set aside. Moreover, in the event the parties are unable to agree on a resolution, Plaintiff **will** dismiss this lawsuit and file a Chapter 13 bankruptcy, to get caught up on her arrearage over a five year period.

### 4.    Citi is violating the redemption statute.

This argument, seeking to enforce Plaintiff's right to redeem the Property from sheriff's sale, is pled in the alternative to the arguments set forth above, which seek to void the sheriff's sale entirely, and refund the purchase price.

MCR 600.3240 governs redemption from a sheriff's sale, and requires that once a redemption is requested, the purchaser is only entitled to a refund of the purchase price, plus interest at the rate stated in the mortgage from the date of sale to the date of redemption, as well as the amount of the sheriff's fee, and finally a fee of $5.00 for the care and custody of the redemption money. *See MCL 600.3240(2.)*

In this case, Defendants advised Citi that the sale was conducted illegally, in violation of the TRO, and that Defendants intended to redeem the Property on behalf of Plaintiff, on or about October 1, 2014, but Citi has steadfastly refused since that date to accept the tender of payment.

MCL 600.3248 provides as follows:

If any person entitled to receive such redemption moneys, shall, upon payment or tender thereof to him, refuse to make and acknowledge

such certificate of payment, he shall be liable to the person aggrieved thereby, in the sum of $100.00 damages, over and above all the actual damages sustained, to be recovered in a civil action, except that no damages of any kind may be recovered from any register of deeds who shall refuse to accept tender of payment after the time indorsed upon the deed when the same shall become operative in case the premises are not redeemed, and the officer or person making the sale shall be entitled to rely conclusively upon the recital of the length of the redemption period contained in the notice of foreclosure in making such indorsement upon the deed.

Citi is in violation of the above-quoted statute. As PennyMac will testify, PennyMac has tendered the redemption funds, plus interest and fees required by MCL 600.3240, but Citi refuses to accept the funds and/or acknowledge redemption, and instead insists that it will not allow redemption unless it is paid $35,000 more than the redemption amount required by the above-referenced statute.

Based upon the foregoing, the Court should set aside the Sheriff's Deed, and issue an Opinion and Order stating the amount required for Plaintiff to effectuate a redemption of the Property as of October 1, 2014. Plaintiff further requests that the Court make a determination of the amount that Citi should be penalized, pursuant to the above-quoted statutes, and order that the same be set-off the amount required to redeem.

## B.   PENNYMAC IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS.

For more than the first year of litigation, the parties were seemingly negotiating the amount required to set aside the Sheriff's Deed in good faith, and it appeared that the matter would settle. However, Pennymac has just recently cut off settlement communications, pulled prior offers off the table, and attempted to run the clock out on Plaintiff by seeking a ruling on its Motion to Dismiss. As such, Plaintiff has not really had sufficient time to develop facts to oppose Defendant'' Motion.

Regardless, Plaintiff has clearly fashioned a Verified 1st Amended Complaint which states claims upon which relief can be granted against Pennymac, as the seller in a transaction that Plaintiff seeks to void, and otherwise puts Pennymac on notice of its claims, which is all she was required to do by the Federal Rules of Civil Procedure in the first place.

Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In addition, "[A] plaintiff will not be thrown out of court on a Fed. R. Civ. P. 12(b)(6) motion for lack of detailed facts." *In re Tower Air, Inc.*, 416 F.3d 229, 237 (3d Cir. 2005).

12

Plaintiff's Verified 1st Amended Complaint specifically alleges that Pennymac conducted a sheriff's sale in violation of a TRO, and that Plaintiff has sued Pennymac in an attempt to get the Court to compel Pennymac to cancel the sheriff's sale and refund the purchase price to Citi, as follows:

> 22.    Plaintiff attempted to work with the Servicer, but the Servicer insisted on foreclosing, presumably because Plaintiff's property is such a valuable piece of lakefront land.
>
> 23.    However, the Property is more than just a piece of land to Plaintiff – it is her home.
>
> 24.    In the summer of 2014, the Servicer retained a local foreclosing law firm to conduct a sheriff's sale of Plaintiff's home.
>
> 25.    Plaintiff filed suit in the Oakland County Circuit Court, on September 4, 2014, requesting and obtaining a Temporary Restraining Order ("TRO"), restraining and enjoining the sheriff's sale of the Property until a show cause hearing on the merits. (See TRO – Ex. "E".)
>
> 26.    Counsel for Plaintiff sent the TRO to the foreclosing law firm, via facsimile, and attempted to follow up with a telephone call, to ensure that sheriff's sale was canceled, but the foreclosing law firm was having serious technical difficulties with all of its communications, i.e. no phone lines, no fax lines, no internet, no email, etc.
>
> 27.    As a result of the technical difficulties at the foreclosing law firm, the foreclosing law firm was unaware of the entry of the TRO, and innocently sold the Property at sheriff's sale to Citi, on September 9, 2014, i.e. during the 14 day window in which the TRO

was in full effect. (See TRO – Ex. "E"; and Sheriff's Deed – Ex. "F".)

28.    Not only was the sale to Citi in violation of the TRO, it was also illegal under Michigan law, because Citi had voluntarily withdrew and otherwise surrendered its ability to transact business in the State of Michigan several months prior to the sheriff's sale. (See Application for Certificate of Withdrawal and LARA Corporate Entity Details – Ex. "G".)

29.    Immediately upon learning of the Sheriff's Deed, counsel for Plaintiff contacted the foreclosing law firm, and spoke to counsel for Defendant in this litigation, as well, and it was agreed by all parties to this litigation that the Sheriff's Deed was issued in error, in an unintentional violation of the TRO, and that the Sheriff's Deed should be set aside, with the purchase price refunded to Citi.

(*See Verified 1ˢᵗ Amended Complaint*, Doc. #17, at pgs. 5-6.)

Based on the foregoing, Plaintiff's Verified 1ˢᵗ Amended Complaint put Pennymac on notice that Plaintiff is suing Pennymac because Pennymac sold Plaintiff's home, which she loves and wants to continue residing in, out from underneath her, in violation of an injunction that she had obtained in a court of competent jurisdiction. (See Verified 1st Amended Complaint, Doc. #17, at pgs. 5-6.)

For Pennymac's counsel to read the above-quoted allegations and respond that they have absolutely no clue why their clients are being sued in this case is beyond reason, and is indeed frivolous.

In addition to the foregoing, Plaintiff alleges as follows:

## COUNT 3 — DECLARATORY RELIEF: SET ASIDE SHERIFF'S SALE CONDUCTED IN VIOLATION OF INJUNCTION

54.    Plaintiff hereby adopts and incorporates by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

55.    As more fully set forth in the Common Allegations above, the sheriff's sale was conducted while the TRO was in full force and effect, which specifically "preserves the status quo", by "restraining and enjoining the sheriff's sale of the Property, commonly known as 3700 Orchard Lake Road, Orchard Lake, MI 48324-1642, pending a show cause hearing on the merits", which the TRO stated on its face was to occur on Wednesday, September 17, 2014, at 8:30 a.m. (See TRO – Ex. "E".)

56.    The sale occurred during the specific time-frame in which the TRO was in effect and barred the sale, i.e. between September 4, 2014 and September 17, 2014, on September 9, 2014.

57.    In other words, Defendants did not have a legal right to foreclose at the time they conducted the sheriff's sale, and the violation of the TRO therefore constituted a structural defect, which goes to the very heart of defendant's ability to foreclose by advertisement in the first instance.

58.    Based on the foregoing, the sheriff's sale must be set aside as void ab initio, in accordance with Michigan law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Judgment in her favor and against Defendants, granting the following relief:

A.     Enter a Temporary Restraining Order preserving the status quo, by restraining and enjoining the eviction of Plaintiff and/or the conveyance of the Property to any third party, pending a hearing relative to Plaintiff's request for a Preliminary Injunction;

B.     After a hearing on the merits, enter an Order setting aside the Sheriff's Deed and ordering the refund of the purchase price, only, from the Servicer to Citi;

C.     In the alternative to Request for Relief B above, after a hearing on the merits, enter a Preliminary Injunction preserving the status quo, by restraining and enjoining the eviction of Plaintiff and/or the conveyance of the Property to any third party, pending Plaintiff's request for the Sheriff's Deed to be set aside after a trial on the merits;

D.     Order that the Sheriff's Deed be set aside upon the payment of the purchase price, only, from the Servicer to Citi;

E.     Order Defendant, Citi, to pay any/all damages incurred by Plaintiff, as a proximate result of its above-referenced misconduct in refusing to voluntarily set aside a knowingly illegal Sheriff's Deed;

F.     An award of actual costs, including reasonable attorney fees, so wrongfully incurred, against Defendant, Citi; and

G.     Grant Plaintiff any such other and further relief as the Court deems just and fair.

**COUNT 4 — DECLARATORY RELIEF: SET ASIDE SHERIFF'S SALE TO COMPANY NOT AUTHORIZED TO CONDUCT BUSINESS IN MICHIGAN**

16

59.   Plaintiff hereby adopts and incorporates by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

60.   April 22, 2014, Citi filed an Application for Certificate of Withdrawal with the State of Michigan Department of Licensing and Regulatory Affairs, Corporations, Securities and Commercial Licensing Bureau, in which Citi surrendered "its authority to transact business or conduct business affairs in Michigan".   (See Application for Certificate of Withdrawal and LARA Corporate Entity Details – Ex. "G".)

61.   As more fully set forth in the Common Allegations above, Citi appeared at the sheriff's sale, participated in the auction, and purchased the Property on September 9, 2014, i.e. nearly five months after it surrendered the authority to conduct such transactions within the State of Michigan. (See Sheriff's Deed – Ex. "F"; and Application for Certificate of Withdrawal and LARA Corporate Entity Details – Ex. "G".)

62.   Based on the foregoing, Citi did not have the legal authority to purchase the Property at sheriff's sale, and certainly does not have the legal authority to challenge the parties to this litigation, who have all consented to set aside the Sheriff's Deed.

63.   The sale to Citi constituted a structural defect going to the heart of the sheriff's sale, and the Sheriff's Deed must be set aside as void ab initio, in accordance with Michigan law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Judgment in her favor and against Defendants, granting the following relief:

A.     Enter a Temporary Restraining Order preserving the status quo, by restraining and enjoining the eviction of Plaintiff and/or the conveyance of the Property to any third party, pending a hearing relative to Plaintiff's request for a Preliminary Injunction;

B.     After a hearing on the merits, enter an Order setting aside the Sheriff's Deed and ordering the refund of the purchase price from the Servicer to Citi;

C.     In the alternative to Request for Relief B above, after a hearing on the merits, enter a Preliminary Injunction preserving the status quo, by restraining and enjoining the eviction of Plaintiff and/or the conveyance of the Property to any third party, pending Plaintiff's request for the Sheriff's Deed to be set aside after a trial on the merits;

D.     Order that the Sheriff's Deed be set aside upon the payment of the purchase price, only, to Citi, by the Servicer;

E.     Order Defendant, Citi, to pay any/all damages incurred by Plaintiff, as a proximate result of its above-referenced misconduct in refusing to voluntarily set aside a knowingly illegal Sheriff's Deed;

F.     An award of actual costs, including reasonable attorney fees, so wrongfully incurred, against Defendant, Citi; and

G.     Grant Plaintiff any such other and further relief as the Court deems just and fair.

## COUNT 5 — DECLARATORY RELEF RE: REDEMPTION

64.   Plaintiff hereby adopts and incorporates by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

18

65. This Count is pled in the alternative to Counts 3 and 4 above.

66. MCR 600.3240 governs redemption from a sheriff's sale, and requires that once a redemption is requested, the purchaser is only entitled to a refund of the purchase price, plus interest at the rate stated in the mortgage from the date of sale to the date of redemption, as well as the amount of the sheriff's fee, and finally a fee of $5.00 for the care and custody of the redemption money. See MCL 600.3240(2.)

67. In this case, both Plaintiff and Defendants advised Citi that the sale was conducted illegally, in violation of the TRO, and that Defendants intended to redeem the Property on behalf of Plaintiff, on or about October 1, 2014, but Citi has steadfastly refused since that date to accept the tender of payment.

68. MCL 600.3248 provides as follows:

If any person entitled to receive such redemption moneys, shall, upon payment or tender thereof to him, refuse to make and acknowledge such certificate of payment, he shall be liable to the person aggrieved thereby, in the sum of $100.00 damages, over and above all the actual damages sustained, to be recovered in a civil action, except that no damages of any kind may be recovered from any register of deeds who shall refuse to accept tender of payment after the time indorsed upon the deed when the same shall become operative in case the premises are not redeemed, and the officer or person making the sale shall be entitled to rely conclusively upon the recital of the length of the redemption period contained in the notice of foreclosure in making such indorsement upon the deed.

69. Citi is in violation of the above-quoted statute.

70. Specifically, the Servicer has tendered the redemption funds, plus interest and fees required by MCL 600.3240, but Citi refuses to accept the funds and/or acknowledge payment or redemption, and instead insists upon being paid far more money than it is entitled to by statute, i.e. a whopping $35,000.

71. Plaintiff has suffered damages as a result of Citi's stubborn refusal to accept the tender of redemption funds from the Servicer.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Judgment in her favor and against Defendants, granting the following relief:

A. Enter a Temporary Restraining Order preserving the status quo, by restraining and enjoining the eviction of Plaintiff and/or the conveyance of the Property to any third party, pending a hearing relative to Plaintiff's request for a Preliminary Injunction;

B. After a hearing on the merits, enter an Order declaring that the Servicer shall tender redemption funds in an amount required to redeem the Property from sheriff's sale as of October 1, 2014, and upon tender of payment, a Redemption Certificate shall be recorded in the offices of the Oakland County Register of Deeds;

C. In the alternative to Request for Relief B above, after a hearing on the merits, enter a Preliminary Injunction preserving the status quo, by restraining and enjoining the eviction of Plaintiff and/or the conveyance of the Property to any third party, pending Plaintiff's request for redemption after a trial on the merits;

D. Order Defendant, Citi, to pay any/all damages incurred by Plaintiff, as a proximate result of its above-referenced misconduct in refusing to voluntarily set aside a knowingly illegal Sheriff's Deed;

      E.    An award of actual costs, including reasonable attorney fees, so wrongfully incurred, against Defendant, Citi; and

      F.    Grant Plaintiff any such other and further relief as the Court deems just and fair.

(*See Verified 1ˢᵗ Amended Complaint*, Doc. #17, at pgs.

Based on the foregoing quoted allegations from Plaintiff's Verified 1ˢᵗ Amended Complaint, Plaintiff is suing Pennymac in Counts 3, 4 and 5, as a necessary party to Plaintiff's claims for declaratory and injunctive relief seeking a Court Order compelling Pennymac to cancel the sheriff's sale and refund the purchase price to Citi, or in the alternative, to effectuate a redemption as of October 1, 2014, with interest paid to Citi only to that date.

Again, for Pennymac's counsel to read the above-quoted allegations and respond that they have absolutely no clue why their clients are being sued in this case is beyond reason, and is indeed frivolous. Put plainly, Pennymac's Motion on Counts 3-5 should be denied, and Plaintiff should be awarded costs and reasonable attorney fees for being forced to respond thereto.

In fact, motions such as Defendants have been routinely denied in cases similar to this case. For example, in *Mott v. Bank of America, N.A.*, No. 1:12-cv-00462 (W.D. Mich. 2012), the Honorable Robert J. Jonker held:

The fundamental dispute between the parties is whether the foreclosure process in this case was lawful on the verified facts articulated by plaintiff…. The mortgagor plaintiff has pleaded –

actually sworn – facts sufficient to put defendants on notice of the factual and legal bases for her claims. Those claims may or may not ultimately survive a Rule 56 motion, but the best time to address them all is after each side has had a full opportunity to develop the record. Even defendants' motion papers tacitly recognize the need for material outside the four corners of plaintiffs complaint to resolve the merits because at least one of defendants' 29 exhibits includes a transactional document (the original promissory note) that was not part of plaintiff's original filing. Moreover, the briefing of the parties is replete with factual assertions or assumptions that both should have the opportunity to test and support in plenary discovery. Under these circumstances, denial of a motion to dismiss is appropriate. See Fed. R.Civ. P. 12(d).

Moreover, in this case, as in many similar cases, there are eminently practical reasons to deny a Rule 12 motion without prejudice and permit the parties to develop relevant facts…. it behooves the parties and this Court to take full account of [any potential settlements with the Department of Justice which could lead to a modification] before proceeding to final adjudication….

(*See* Mott Order – **Ex. "D" hereto**.)

The previously quoted *Mitan* case, as well as the above-quoted *Mott*, are applicable to this case. Pennymac is on notice of Plaintiff's claims challenging a sheriff's sale conducted in violation of an injunction, and requesting that the Court compel Pennymac to cancel the sale and refund the purchase price or otherwise effectuate a redemption to a date certain, and for that reason alone, Pennymac's Motion should be denied.

Moreover, Pennymac filed a Motion under Fed. R. Civ. P 12(b)(6), which raises conflicting factual allegations, thereby creating a question of fact, which also requires that Pennymac's Motion be denied.

Finally, Pennymac attaches the Note from outside the record, proving that judgment on the pleadings per Fed. R. Civ. P. 12(b)(6), which it has requested, is inappropriate, and that Pennymac is really seeking extraordinary relief pursuant to Fed. R. Civ. P. 56, prior to the conduct of discovery by any party.

Like any other party, Plaintiff is entitled to develop a record, and Pennymac may file a motion under Fed. R. Civ. P. 56 at its completion. In the interim, Pennymac should comply with its obligation under Michigan law to terminate the void sheriff's sale, and refund the over a half million dollar windfall it is illegally hoarding.

## C. PLAINTIFF HAS SUFFERED PREJUDICE AS A RESULT OF THE ISSUANCE OF A SHERIFF'S DEED IN VIOLATION OF A TRO.

Perhaps Pennymac's weakest, most nonsensical, frivolous, and truly insulting argument is its dubious claim that Plaintiff did not suffer prejudice when Pennymac sold her beloved home of over 30 years out from underneath her feet, illegally, after she paid an attorney thousands of dollars to file a lawsuit and obtain the TRO specifically to save her home from sale. *See Pennymac's Motion*, Doc. #21, at pgs 8-21.)

It is simply not fathomable that Pennymac's lawyers in this case do not understand the difference between "reinstatement" and "redemption". **That** is the prejudice Plaintiff suffered in this case. She paid a lawyer thousands of dollars to

ensure that her legal rights did not shift from the ability to **reinstate** her mortgage by merely paying the past due payments, to an ability only to **redeem** her mortgage from sheriff's sale, requiring her to pay not just the past due payments, but the entire amount of sale.

In this case, Mrs. Panny only needed to pay approximately $100,000 to reinstate the property from default and a pending sheriff's sale, and she had an indefinite amount of time to do so, as long as the sale did not commence. One of the easiest ways for her to reinstate at this point would have been to modify her loan, refinance and payoff Pennymac given that there was equity in the Property, or file a Chapter 13 bankruptcy, which would have guaranteed her the absolute right under federal law to spread the $100,000 arrears over 60 months, i.e. $1,666 per month, at which point her home would have been saved.

However, once Pennymac illegally sold Plaintiff's home out from underneath her, in violation of the TRO, Plaintiff's ability to save her home **drastically changed** from an indefinite amount of time to repay $100,000, including by modification or filing a Chapter 13 bankruptcy, to a mere six month window to pay the sheriff's sale purchase price of $561,150.64, plus interest at the rate specified in the mortgage, as specifically set forth in the Sheriff's Deed that Pennymac has attached as Exhibit "6" to its Motion. *See Pennymac's Motion*, Doc. #21-7.

Clearly, Plaintiff's position of having an indefinite amount of time to pay $100,000 to having six months to pay $561,150.64, as a result of Pennymac's illegal sale of Plaintiff's home, constitutes "prejudice" to Plaintiff, and any suggestion otherwise by Pennymac is simply frivolous. As a result, Pennymac's Motion should be denied as entirely frivolous, and Plaintiff should be awarded costs and reasonable attorney fees for being forced to respond thereto.

## <u>CONCLUSION</u>

Pursuant to the foregoing, the Court should issue an Opinion and Order denying Pennymac's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and awarding costs and reasonable attorney fees to Plaintiff for being compelled to respond thereto.

Respectfully submitted:      **GANTZ ASSOCIATES**

Dated: February 28, 2016    By: <u>/s/ Adam J. Gantz</u>
                         Adam J. Gantz (P58558)
                         Attorneys for Plaintiff
                         31275 Northwestern Highway, Suite 208
                         Farmington Hills, MI 48334
                         (248) 987-6505

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2016, I electronically filed the instant Brief using the Court's ECF system, which will automatically send notice of such filing to all attorneys of record.

Respectfully submitted: **GANTZ ASSOCIATES**

Dated: February 28, 2016          By: /s/ Adam J. Gantz
                                  Adam J. Gantz (P58558)
                                  Attorneys for Plaintiff
                                  31275 Northwestern Highway, Suite 208
                                  Farmington Hills, MI 48334
                                  (248) 987-6505